Putnam J.
subsequently drew up the opinion of the Court.
The first question is, whether the plaintiff has a right to maintain this action ; and if he has, then secondly, whether the action may be brought in the county of Plymouth.
Can the plaintiff maintain this action ?
The regulation and preservation of the alewive fishery in Middleborough has been an object of the particular attention of the legislature. By Prov. St. 23 Geo. 3, c. 5, (A. D. 1749,) all persons were prohibited from taking the alewives there, in any way or time, excepting “ as the inhabitants of the town should vote and order.” That was a temporary act, but was revived from time to time. It was repealed by St. 1791, c. 19, (3 Spec. Laws, 315,) was made perpetual by St. 1796, r. 69, and was again repealed by St. 1797, c. 15.
The St. 1791, c. 19, § 1, authorizes the town annually to farm or hire out the privilege, &c. to such person or persons as will give most for it.
By St. 1797, c. 41, (2 Spec. Laws, 192,) the town is authorized to fix the price of the fish, which is not however to exceed twenty-five cents per hundred.
*394 Another statute (of 1801, c. 25, in 2 Spec. Laws, 469,) which recites, that “whereas doubts have arisen whether the inhabitants of Middleborough are authorized by law to agree with and hire any person or persons to take the fish [alewives] and sell them at the price stipulated by law, and to account with the said inhabitants for the net proceeds of the same,” enacts, that “ it shall and may be lawful for the inhabitants of said town, at any legal meeting called for that as well as other purposes, by themselves or a committee chosen by them for that purpose, to agree with and hire such person or persons as they may deem proper, to take said fish at any or all of the fishing places in said town, and to dispose of them at the price stipulated by law, being accountable to the inhabitants of said town for the net proceeds of the same.”
Afterwards was passed the St. 1815, c. 111, [before recited.] There are various other acts altering the times of catching the fish from time to time, which have no bearing upon the present inquiry.
The power vested in the town by the act of 1815, remains in full force. Under that authority the town, at a legal meeting, sold the right to take the fish at one of the authorized places, for a valuable consideration, to the plaintiff.
It was determined, in Coolidge v. Williams, 4 Mass. R. 144, that it was a part of the common law of the State, that the town may appropriate the fish, if not appropriated by the legislature. By the course of legislation we have seen that the legislature have made no other appropriation, than such as resulted in giving the disposal of the fish to the town, for the use of the town, or the poor thereof.
Now we think it is clear that the plaintiff by the proceedings before stated, acquired a valuable interest or franchise in this fishery, and that he is entitled to a remedy at law for its disturbance. “ In all cases where a man has a temporal loss or damage by the wrong of another, he may have an action on the case to be repaired in damages.” Com. Dig. Action upon the Case, A. There is no doubt but that the fish, in their season, would have run to their accustomed ponds, if they had not been obstructed by the defendant’s dam. The action is analogous to case for stopping a water-course, which would have *395 run to the plaintiff’s mill; or for stopping light and air of ancient windows : more analogous, perhaps, to case disturbing the plaintiff’s decoy of wild fowl. Carrington v. Taylor, 11 East, 571. The case of Keeble v. Hickeringill, cited there in a note, was an action for a similar disturbance. In the very able opinion of Holt C. J., he adverts to two sorts of acts doing damage to a man’s employment, for which an action lies; “ the one is in respect of a man’s privilege, the other, in respect of his property.” And we think the case at bar comes within the first class ; that is, the act of the defendants, of which the plaintiff complains, was a damage to the plaintiff’s privilege in this fishery.
In the case of Weld v. Hornby, 7 East, 195, the right to have the fish which would have passed through a brush wear, was recognized by the court, and the plaintiff recovered damages against the defendant for erecting a close dam which entirely prevented the passage of the fish.
But it has been contended for the defendants, that the plaintiff’s remedy should have been by a suit for the penalties, or by abating the nuisance. We think it very clear at common law, that even if it were a public nuisance, one who sustains a particular injury may have his action for the damage. The same rule and reason must apply to the case of private nuisances. The remedies are cumulative. The penalties inflicted in the act are recoverable by a process in the nature of prosecutions for the public, but that cannot affect the common law right of individuals to recover for the particular injuries they may have sustained by reason of the nuisance. The suits for the penalties may be brought by persons who have no exclusive right to the fish, and would give no satisfaction for the injury done to the true owner.
The province statutes of 8 Anne, c. 3, and 15 Geo. 2, c. 6, with the other acts in relation to this subject, have altered the common law, so far as the public are concerned, in regard to dams without passage-ways for the fish, giving a remedy by suit for the penalties, instead of an indictment for the nuisance. Commonwealth v. Chapin, 5 Pick. 205 ; 5 Dane’s Abr. 246, c. 148, art. 2, § 6. But this does not touch or affect the particular injury which individuals may sustain from the nuisance. *396 The case of Beckford v. Hood, 7 T. R. 620, is very much to this point. The St. 8 Anne, c. 1-9, gave to authors the sole right and liberty of printing their works for fourteen years, ana contains penalties for violating the act. The action of the case was brought for the damages which the plaintiff sustained for the invasion of his literary property. And the defence set up was, that the plaintiff must be confined to the remedies pointed out in the act. But the court all held that those were cumulative remedies. The opinions of Lord Kenyon and his brethren, are worthy of particular attention. I would adopt the words of Ashhurst J. “ Now I can only consider the action for the penalties given to a common informer, as an additional protection, but not intended by the legislature to oust the common law right to prosecute by action any person who infringes this species of property, which would otherwise necessarily attach upon the right of property so conferred. Where an act of parliament vests property in a party, the other consequence follows of course, unless the legislature make a special provision for the purpose ; and that does not appear to me to have been intended in this case.” The penalties operate as a punishment of the offender, but make no adequate compensation for the particular injury to the plaintiff.
The distinction to be taken is where a statute does not vest a right in a person, but only prohibits the doing of some act under a penalty ; in such a case the party violating the statute is liable to the penalty only ; but where a right of property is vested in consequence of the statute, it is to be vindicated by the, common law, unless the statute confines the remedy to the penalty.
The rule stated in Com. Dig. Action upon Statute, C, is, “ If a statute gives a remedy in the affirmative, (without a negative expressed or implied,) for a matter which was actionable by the common law, the party may sue at the common law, as well as upon the statute ; for this does not take away the common law.”
Now the gist of this suit consists in the plaintiff’s having proved that he had a sole, right to the fishery during the time that the defendants interrupted it. That is the matter which is actionable at common law, and it appears to us, that the *397 common law remedy has not been taken away by the statute under which the plaintiff acquired his right. The court, in Almy v. Harris, 5 Johns. R. 175, seemed to think that as the plaintiff had no right to the ferry but what he derived from the statute, his remedy must be confined to the statute. But I think it is of no consequence how the plaintiff acquired the right. The inquiry is, whether he has a right to the franchise or property. If he has, then is it such a right as the common law recognizes, and for the invasion of which the common law gives a remedy. In the case of Beckford v. Hood, before cited, the exclusive right to the literary property was conferred by the statute. It was admitted in that case, that the action was not maintainable at common law, independently of the statute. The term therein specified had not expired.
Upon reason, as well as authority, the plaintiff may well sustain an action for the injury of which he complains.
And the second point is equally clear for the plaintiff. He may unquestionably maintain his action in either county; in Bristol, where the obstruction was raised, as well as in Plymouth where the injury was sustained.
The law to be collected from Bulwer's Case, 7 Co. 1, is decisive upon this point. “When one matter in one county is depending upon the matter in another county, the plaintiff may choose in which county he shall bring his action.” “ As, if two conspire in one county, and put their conspiracy in execution in another, the plaintiff may sue in which county he pleases.” “ So, if a man will not repair a wall in Essex, which he ought to repair, and for which cause my land in Middlesex is drowned, I may bring my action in Essex, for there is the defendant’s fault, or in Middlesex, for there is the damage.” S. P. Com. Dig. Action, N 11. “Where there are several facts material to the plaintiff’s action, arising in different counties, the plaintiff may bring bis action in either.” Mayor, &c. of London v. Cole et al., 7 T. R. 587 ; where tne law as laid down in Bulwer,s case is recognized by Lord Kenyon and Lawrence J.
The case cited at the bar, of Thompson v. Crocker, 9 Pick. 61, was for flowing back the water upon the plaintiff’s mills in the county of Plymouth, by a dam which was in the county *398 of Bristol, and it was supported, in the county of Plymouth The remark in the opinion, “ that the place where the injury was done, viz. at the mills, gives locality to the action, and not the source from which the mischief came,” seems to be too much limited ; the cases above cited showing that the action could have been maintained in either county. But if the case at bar should be governed by the limited rule, it would be supported, for the plaintiff was deprived of his fishery in the count} of Plymouth ; and to use the words of Parker C. J., “it was wholly unnecessary to allege in what county the obstruction was erected.” The writ in the case - v. Abbe de Stratforde, 7 H. 4. 8. pl. 10, was brought in Essex, the county where was the source of the injury to the plaintiff’s land in Middlesex. The injury arose from the neglect of the defendant to repair a wall which he ought to have repaired, in Essex, by reason of which the plaintiff’s land in Middlesex was surrounded with water.
We are all of opinion that the plaintiff is entitled to maintain this action, in the county of Plymouth, notwithstanding he might have brought it in the county of Bristol.
According to the agreement of the parties, the cause is to be sent to a jury, upon the question of the sufficiency of the fish-way, and the amount of the damages sustained.